**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **SAPPHIRE CROSSING LLC,**<br><br>      **Plaintiff,**<br><br> v.<br><br>**THE NPD GROUP, INC.,**<br><br>      **Defendant.** | **Civil Action No. 2:18-CV-07263**<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANT THE NPD GROUP, INC.'S
<u>REQUEST FOR A PRE-MOTION CONFERENCE</u>**

Pursuant to this Court's individual motion practices, Defendant The NPD Group, Inc. files the attached letter requesting a pre-motion conference and leave to file a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Dated: March 7, 2019

FISH & RICHARDSON P.C.

*/s/ Ron Vogel*
John S. Goetz
Ron Vogel
601 Lexington Avenue
52nd Floor
New York, New York 10022
Tel: (212) 763-5070
Fax: (212) 258-2291
goetz@fr.com
rvogel@fr.com

Neil J. McNabnay
Ricardo J. Bonilla
Aaron P. Pirouznia
1717 Main Street, Suite 5000
Dallas, Texas 75201
Tel: (214) 747-5070
Fax: (214) 747-2091
mcnabnay@fr.com
rbonilla@fr.com
pirouznia@fr.com
***COUNSEL FOR DEFENDANT
THE NPD GROUP, INC.***



Fish & Richardson P.C.
601 Lexington Avenue
52nd Floor
New York, NY 10022

212 765 5070 main
212 258 2291 fax

March 7, 2019

The Honorable Joan M. Azrack
United States District Court
Eastern District of New York Long Island Courthouse
100 Federal Plaza
Central Islip, NY 11722

**Ron Vogel**
Associate
rvogel@fr.com
212 641 2309  direct

Re:   *Sapphire Crossing, LLC v. The NPD Group, Inc.*, Case No. 2:18-cv-07263-JMA-AYS

Dear Judge Azrack:

NPD submits this letter pursuant to Section IV.B of Your Honor's Individual Rules to request a pre-motion conference and leave to file a motion to dismiss pursuant to Rule 12(b)(6).

Sapphire Crossing LLC ("Sapphire Crossing") filed this lawsuit accusing The NPD Group, Inc. ("NPD") of infringing U.S. Patent No. 6,891,633 ("the '633 Patent"). Sapphire Crossing accuses NPD of infringing claims 19 and 20 of the '633 Patent, which are the only two claims that survived an *inter partes* Review. NPD disputes these allegations and seeks to move to dismiss the complaint because the '633 Patent does not embrace patent-eligible subject matter.

## I.     Legal Standard for Dismissal Pursuant to Rule 12(b)(6)

Patentability under 35 U.S.C. § 101 is a threshold legal issue. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010). Accordingly, the § 101 inquiry is properly raised at the pleadings stage if it is apparent from the face of the patent that the asserted claims are not directed to eligible subject matter. *See Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 718–19 (Fed. Cir. 2014) (Mayer, J., concurring). In those situations, claim construction is not required to conduct a § 101 analysis. *Bancorp Servs. L.L.C. v. Sun Life Assur. Co.*, 687 F.3d 1266, 1273 (Fed. Cir. 2012) ("[C]laim construction is not an inviolable prerequisite to a validity determination under § 101.").

Section 101 of the Patent Act recognizes three exceptions to patent eligibility: "laws of nature, physical phenomena, and **abstract ideas**." *Diamond v. Chakrabarty*, 447 U.S. 303, 309 (1980) (emphasis added). Abstract ideas are ineligible for patent protection because a monopoly over these ideas would preempt their use in all fields. *See Bilski*, 561 U.S. at 611–12. In other words, "abstract intellectual concepts are not patentable, as they are the basic tools of scientific and technological work." *Id.* at 653 (quoting *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)).

Determining whether a patent claim is impermissibly directed to an abstract idea involves two steps. First, the Court determines "whether the claims at issue are directed to a patent-ineligible concept." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014). Second, if the claim contains an abstract idea, the Court evaluates whether there is "an 'inventive concept'—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id*.

## II.     The '633 Patent Does Not Embrace Patent-Eligible Subject Matter.

The claims of the '633 Patent fail both prongs of the *Alice* test. Resolving these issues does not require discovery or formal claim construction. To avoid waste of resources unnecessarily litigating an invalid patent, NPD requests that the Court allow NPD to move to dismiss the Complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.



The Honorable Joan M. Azrack
March 7, 2019
Page 2

      A.      *Alice* Step 1: The '633 Patent is directed to an abstract idea

The claims of the '633 Patent fail step one of the *Alice* inquiry because they are directed to the abstract idea of data recognition and transfer, and the *Recognicorp* case held claims similar to those at issue here invalid under § 101. In *Recognicorp*, the Federal Circuit found the patent claim at issue to be directed toward the abstract idea of "encoding and decoding image data." 855 F.3d at 1324. The Federal Circuit described the claim as a "method whereby a user displays images on a first display, assigns image codes to the images through an interface using a mathematical formula, and then reproduces the image based on the codes." *Id.* at 1326. As such, the Court found that this method reflected nothing more than "standard encoding and decoding." *Id.*

The '633 Patent falls similarly short of claiming patent-eligible subject matter by only claiming the desired result—capturing, uploading, merging, and transferring an image—without describing any specific roadmap for doing so. *See Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1348 (Fed. Cir. 2015). All Claim 19 explains is a way to use a generic copier with a similarly generic computer to capture, upload, merge, and transfer images and associated data. Such a broad concept is not patent eligible because it "recite[s] an abstraction—an idea, having no particular concrete or tangible form." *Ultramercial*, 772 F.3d at 715.

Claim 19 is directed to an abstract end-result and lacks the specificity required to confer patent eligibility. *See Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999 (Fed. Cir. 2018); *Core Wireless Licensing S.A.R.L. v. LG Elec., Inc.,* 880 F.3d 1356, 1361–63 (Fed. Cir. 2018) (holding eligible claims "directed to a ***specific*** improvement in the capabilities of computing devices") (emphasis added); *RecogniCorp*, 855 F.3d at 1326 (holding ineligble claims not directed to "a ***specific*** means or method for improving technology") (emphasis added). Indeed, Claim 19 does not require any sort of new or unconventional machine or process for capturing, uploading, merging, or transferring data—it requires only that well-known devices be connected to achieve an end-result of image transfer.

Claim 19 of the '633 Patent is the only surviving independent claim and is representative of both claims. *See Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014). The only other claim, dependent Claim 20, requires the electronic data uploaded from the computer to stay with the image transfer device after the computer is disconnected. '633 Patent at cl. 20. This added limitation does not alter the analysis. *Mayo*, 132 S. Ct. at 1292 ("[S]imply appending conventional steps, specified at a high level of generality, to […] abstract ideas cannot make [them] patentable"). Therefore, the '633 Patent is directed to the abstract idea of data recognition and transfer and fails step one of *Alice*.

      B.      *Alice* Step 2: The claims contain no inventive concept

The '633 Patent also fails step two of the *Alice* inquiry. Because the patent is directed to an abstract idea, step two requires the Court to determine whether the patent contains an "inventive concept sufficient to transform the claimed abstract idea into a patent eligible application." *Alice*, 134 S. Ct. at 2357. To pass this test, the '633 Patent "must include additional features" that "must be more than well-understood, routine, conventional activity." *Ultramercial*, 772 F.3d at 715 (quotation omitted). Here, the '633 Patent is generic and does not contain meaningful limitations that restrict it to a non-routine, specific application of the abstract idea.



The Honorable Joan M. Azrack
March 7, 2019
Page 3

Each of the steps of the '633 Patent is described only at a high level of generality. The patent requires "transferring information from a first medium," "providing an image transfer device having a scanner for reading an image," "uploading electronic data . . . to the transfer device from a computer connected to the transfer device," "merging the electronic data with the image read by the scanner," and "transferring the merged image by the transfer device to a second medium." These steps are facilitated with an "image transfer device having a scanner" and "a computer connected to the transfer device." But the claimed "image transfer device" can be virtually any device capable of taking a photograph. *See* '633 Patent at 3:53-54.

The claims of the '633 Patent are implemented on generic computer technology and therefore do not contain an inventive concept sufficient to confer eligibility. There is simply nothing "inventive" about using a known process (*i.e.*, scanning images) and implementing it based on computer resources. As explained above, the abstract functional descriptions in the remaining claims of the '633 Patent are devoid of any technical explanation as to how to implement the purported invention in an inventive way. *See In re TLI Commc'ns LLC Patent Litigation*, 823 F.3d 607, 615 (Fed. Cir. 2016) (claims failed *Alice*'s step 2 where specification limited its discussion of "additional functionality" of conventional components "to abstract functional descriptions devoid of technical explanation as to how to implement the invention").

The '633 Patent does not contain any discussion of unconventionality that would be relevant to the § 101 analysis. It "is silent as to what the specific ***claimed*** improvement is, how it differs from the prior art, or how any inventive feature, alone or as an ordered combination, is used in an unconventional manner." *TriPlay, Inc. v. WhatsApp Inc.*, 2018 WL 1479027, at *8 (D. Del. Mar. 27, 2018) (citing *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018)) (emphasis added). Accordingly, it is unlike the claims in *Berkheimer* that led to factual disputes making the eligibility determination improper at the Rule 12 stage. The patent expressly states that it does not utilize any particular non-conventional ***mechanism*** for achieving the ***result***. *See Internet Patents*, 790 F.3d at 1348. Neither the claims nor the specification raises any factual disputes, and the eligibility issue is ripe for the Court to address at Rule 12. Because the claims are devoid of any "inventive concept," they fail step two and are patent-ineligible under § 101.

### III. Proposed Briefing Schedule

If a pre-motion conference is scheduled, NPD proposes to serve its anticipated motion to dismiss within seven (7) days or less of the date thereof. Pursuant to Local Civ. R. 6.1(b)(2)-(3), NPD proposes that Sapphire Crossing's responsive memoranda and supporting affidavits be served within fourteen (14) days thereafter, and that NPD's reply papers be served within seven (7) days after service of the answering papers.

Very truly yours,

Ron Vogel
Associate
cc:  All counsel of record by ECF

## **CERTIFICATE OF SERVICE**

     I hereby certify that a true and correct copy of the above foregoing document was filed with the Clerk of the Court using CM/ECF system, which will send notification of such filing to all counsel of record.

     This 7th day of March, 2019.

                                                  */s/Ron Vogel*
                                                       Ron Vogel